UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BALDWIN: CARLETON, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 5439 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| VILLAGE OF EVERGREEN PARK, JEFF LAYHE, JAMES SEXTON, and UNNAMED FEMALE ADMINISTRATOR, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Timothy Baldwin: Carleton filed this *pro se* suit against the Village of Evergreen Park and three of its officials, alleging violations of the First, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments, the Lieber Code, 18 U.S.C. §§ 241, 242, and 1341, the Bar Treaty of 1947, and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, in connection with his being cited and fined for a municipal fencing ordinance violation. Doc. 10. Defendants moved under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 18. Rather than oppose the motion, Baldwin: Carleton moved for and received leave to file an amended complaint. Docs. 21-22. The amended complaint repleads the same federal claims, adds a claim under the Illinois Farm Nuisance Suit Act, 740 ILCS 70/1 *et seq.*, and alleges additional facts. Doc. 34. Defendants again move under Rule 12(b)(6) to dismiss. Doc. 28. Baldwin: Carleton's federal claims are dismissed with prejudice, and the court exercises its discretion under 28 U.S.C. § 1367(c)(3) to relinquish jurisdiction over his state law claim.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Baldwin: Carleton's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Baldwin: Carleton as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Baldwin: Carleton has a vegetable garden, which he considers "front yard horticultural art." Doc. 34 at 6. Defendants "selectively enforce[ed]" a municipal fencing ordinance against him. *Ibid*. He was cited on June 21, 2019 and given less than 30 days' notice of an administrative hearing, which took place on July 13, 2019 and was a "clown court." *Ibid*. Jeff Layhe and James Sexton, Evergreen Park officials named as defendants along with the Village and "Unnamed Female Administrator," discussed the matter prior to the hearing. *Id*. at 2, 6. A "hand picked" Village attorney—the aforementioned "Unnamed Female Administrator"— presided over the hearing and ignored the arguments Baldwin: Carleton asserted under the Farm Nuisance Suit Act. *Id*. at 2, 6-7. The Administrator told Baldwin: Carleton that his parcel was not zoned for agriculture and ignored the facts that the Village operated a "Community Farm" and that other contractors use the same fencing materials he used. *Id*. at 6. Baldwin: Carleton

could have appealed the Administrator's adverse decision by filing suit in state court but did not do so. *Ibid.*; Doc. 28 at 2.

As a result of losing his fencing, Baldwin: Carleton lost a significant amount of his cabbage, corn, and pumpkin crops because he could no longer keep animals out of his garden. Doc. 34 at 6. The Village fabricated a "3 notice private administrative process" and a default judgment, and doubled his fine to $600 even though his fencing cost less than $200. *Ibid*. In Baldwin: Carleton's view, the Village has no authority "to interfere with civilians growing food crops" and cannot force a civilian to appear at a hearing. *Ibid*. A former Village employee could provide testimony that "a pattern of conspiracy and corruption [existed] between Sexton and … Layhe" and that the "clown court is a weekly occurrence where lawful activities are converted into a source of revenue for … the Village." *Ibid*.

## Discussion

### I. Federal Claims

Defendants move to dismiss Baldwin: Carleton's First Amendment claim on the ground that "gardening in this context is not a form of expression protected by the First Amendment." Doc. 28 at 4-5. Baldwin: Carleton does not explain why his garden is expressive, and instead contends only that "prior case law establishes that the cultivated garden is in fact protected under the [F]irst [A]mendment." Doc. 35 at 2-3.

Baldwin: Carleton is right that case law does not foreclose the possibility that a garden may be a form of expression protected by the Free Speech Clause. *See Disc. Inn, Inc. v. City of Chicago*, 803 F.3d 317, 326 (7th Cir. 2015) ("Though plants do not speak, this need not exclude all gardens from the protection of the [Free Speech] clause, for the clause has been expanded by judicial interpretation to embrace other silent expression, such as paintings."); *see generally* R. William Thomas, *The Art of Gardening: Design Inspiration and Innovative Planting Techniques*

3

*from Chanticleer* (2015); Jules Janick, *Horticulture and Art*, *in* 3 Horticulture: Plants for People and Places 1197 (Geoffrey R. Dixon & David E. Aldous eds., 2014). But case law does not sweep *all* gardens within the ambit of First Amendment speech. *See Disc. Inn*, 803 F.3d at 326 ("It's not as if the plaintiff invented, planted, nurtured, dyed, clipped, or has otherwise beautified its weeds, or that it exhibits or intends or aspires to exhibit them in museums or flower shows. Its weeds have no expressive dimension. The plaintiff just doesn't want to be bothered with having to have them clipped."). Beyond his conclusory reference to his "front yard horticultural art," Doc. 34 at 6, Baldwin: Carleton does not allege facts giving rise to a reasonable inference that his garden is expressive, and thus fails to state a First Amendment claim. *See Disc. Inn*, 803 F.3d at 326-27 ("Taken to its logical extreme, the plaintiff's defense of the weed would preclude any efforts by local governments to prevent unsightly or dangerous uses of private property. Homeowners would be free to strew garbage on their front lawn[ and] graze sheep there …—all in the name of the First Amendment.").

Defendants interpret Baldwin: Carleton's Fourteenth Amendment claim as a procedural due process claim challenging the conduct of his administrative hearing. Doc. 28 at 5-6. Baldwin: Carleton accepts this characterization in responding that he was deprived of his property when the "village's hand picked attorney/administrator" disregarded applicable state law; he also argues without support that conducting the notice and payment process via the federal mail system necessitates a remedy in federal court. Doc. 35 at 4-5. Baldwin: Carleton does not explain the basis for his Fifth Amendment claim, so the court construes that claim as another effort to proceed on a procedural due process theory—a futile effort given that a Fifth Amendment procedural due process claim can be brought only against the federal government and its officials.

4

The Fourteenth Amendment's Due Process Clause prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). Defendants maintain that Baldwin: Carleton's due process claim fails because (i) he does not identify the protected interest that was lost and (ii) the complaint acknowledges he was provided process by way of an administrative hearing and an appeal procedure in state court. Doc. 28 at 6. Although Baldwin: Carleton cursorily states that the administrative hearing he received "do[es] not constitute due process," Doc. 35 at 4-5, he provides no support for that position and does not respond to Defendants' argument that the hearing—with the availability of review in state court—provided him due process. He thereby forfeits any such argument, and his due process claim is dismissed. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").

Defendants move to dismiss the Eighth Amendment claim, which arises under the Excessive Fines Clause, on the ground that there is no basis for Baldwin: Carleton's submission that the fines imposed on him were grossly disproportionate to his violation of the ordinance. Doc. 28 at 6-7. "[U]nder the Eighth Amendment, a punitive fine 'must bear some relationship to

the gravity of the offense it is designed to punish.'" *United States v. Davis*, 859 F.3d 429, 435 (7th Cir. 2017) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). A fine "violates the Excessive Fines clause if it is grossly disproportional to the gravity of a defendant's offense." *Ibid.* (quoting *Bajakajian*, 524 U.S. at 334).

Baldwin: Carleton contends that *any* fine is excessive because his garden is protected by the First Amendment and the Illinois Farm Nuisance Suit Act. Doc. 35 at 5. As shown above, Baldwin: Carleton's First Amendment claim fails. His argument that the fine is inconsistent with the Farm Nuisance Suit Act is not an argument that it was excessive under the Eighth Amendment, but instead an argument that its imposition violated state law.

Because Baldwin: Carleton does not argue that the fencing ordinance fails to fulfill a legitimate governmental interest, "there has to be a nontrivial penalty for violating it in order to induce even minimal compliance." *Disc. Inn*, 803 F.3d at 320. Baldwin: Carleton does not even attempt to explain why the $600 fine imposed for the violation was grossly disproportionate in light of the Village's legitimate interests in enforcing its ordinances, thereby forfeiting the point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto*, 651 F.3d at 721 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *see also Boogaard v NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to

6

respond to the defendant's argument under Rule 12(b)(6) that they failed to state a claim). Any such argument would have failed in any event. *See Disc. Inn*, 803 F.3d at 319-21 (affirming the district court's dismissal of the plaintiff's Excessive Fines Clause claim given the city's legitimate interests in enforcing its ordinances, where the maximum fine for violating a weed ordinance was $1,200 and the maximum fine for violating a fencing ordinance was $600). Baldwin: Carleton's Eighth Amendment claim is dismissed.

Defendants move to dismiss the Ninth Amendment, Thirteenth Amendment, and 18 U.S.C. §§ 241, 242, 1341 claims on the ground that none confer a private right of action. Doc. 28 at 7-8. Baldwin: Carleton concedes the point as to the Ninth Amendment claim and withdraws his Thirteenth Amendment claim. Doc. 35 at 6. And there is no private right of action to enforce §§ 241, 242, and 1341. *See Boyd v. Jacobs Project Mgmt. Co.*, 740 F. App'x 99, 101 (7th Cir. 2018) ("[The plaintiff] also attempted to assert violations of laws that she is not authorized to prosecute. Her complaint cited 18 U.S.C. § 241, but this is a criminal statute that empowers only federal prosecutors, not private citizens."); *Kathrein v. McGrath*, 166 F. App'x 858, 863 (7th Cir. 2006) ("Moreover, though [the plaintiff] frequently has invoked the federal mail fraud statute in this litigation, *see* 18 U.S.C. § 1341, there is no private right of action under that criminal provision.").

Defendants move to dismiss Baldwin: Carleton's RICO claim because he does not allege facts sufficient to show the predicate offense or pattern of offenses or how it caused his injury. Doc. 28 at 8-9. In response, Baldwin: Carleton asserts that Defendants "initiated a three notice private administrative process through the mail under false pretenses, [and] … hired an attorney to hold mock hearings in the absence of a sitting judge," adds that "pending testimony of one of their former employees regarding their pattern of offenses" would satisfy the pattern of offenses

7

requirement, and asks for the chance to take discovery to uncover additional facts. Doc. 35 at 8. Baldwin: Carleton does not come close to pleading the type of enterprise that could support a viable RICO claim. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336-37 (7th Cir. 2019) ("Establishing a RICO violation requires proof by a preponderance of the evidence of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. It follows that a plaintiff must plead these elements to state a claim. … To plead a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity—a standard known as the continuity plus relationship test.") (citation and internal quotation marks omitted); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015) (explaining that pleading an "enterprise" under § 1962(c) requires the plaintiff to allege a distinct "association-in-fact" that has "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes") (internal quotation marks omitted); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998) (holding that pleading "a viable RICO conspiracy claim" requires more than "conclusory and vague allegations concerning the collective conduct of the 'defendants'"). His RICO claim is therefore dismissed.

      Finally, Baldwin: Carleton claims that Defendants violated the Bar Treaty of 1947 and the Lieber Code. In response to Defendants' request that those claims be dismissed, Doc. 28 at 3, Baldwin: Carleton offers no ground on which they could proceed, thereby abandoning them. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [the plaintiff] did not provide the district court with any basis to decide [his] claims, and did not respond to the [defendants'] arguments, these claims are waived."); *Alioto*, 651 F.3d at 721. In any event, the Lieber Code, which "pertain[s] to U.S. detention of citizens during the Civil War,"

*Hamdi v. Rumsfeld*, 542 U.S. 507, 574 n.5 (2004) (Scalia, J., dissenting) (citing Instructions for the Government of Armies of the United States in the Field, Gen. Order No. 100 (1863), reprinted in 2 F. Lieber, Miscellaneous Writings, p. 246); *see also id.* at 519 (plurality opinion) (referring to the Lieber Code as "code binding the Union Army during the Civil War"), has no relevance to this case. It is not entirely clear what Baldwin: Carleton means by the Bar Treaty of 1947, but it likely is a reference to the webpage at http://barefootsworld.org/bar1947.html, which appears to present resolutions adopted by the American Bar Association's House of Delegates concerning the Inter-American Treaty of Reciprocal Assistance. *See Crisis in Foreign Policy: House of Delegates Votes an Emphatic Stand*, 33 A.B.A. J. 1090 (1947). Neither the resolutions nor the Treaty have any conceivable relevance here.

**II.    State Law Claim**

Because the parties are not diverse, jurisdiction over the Farm Nuisance Suit Act claim is premised on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining [supplemental] state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016). That general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim[s] [are] to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

None of the exceptions apply here. First, if this court relinquishes supplemental jurisdiction over the state law claim, Illinois law would give Baldwin: Carleton one year to refile the claim in state court if its limitations period expired while the case was pending here. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (same). Second, substantial federal judicial resources have not yet been committed to the state law claim. Third, it is not "absolutely clear how the [supplemental] claim[] can be decided." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because no exception applies, relinquishing jurisdiction over the state law claim is the appropriate course under § 1367(c)(3). *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt. Co.*, 672 F.3d at 479-82.

**Conclusion**

Baldwin: Carleton's federal claims are dismissed. The dismissal of those claims is with prejudice, as Baldwin: Carleton has already amended his complaint and does not request leave to amend or suggest how another amendment might cure the defects identified by the present motion to dismiss. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). The court

relinquishes its supplemental jurisdiction over Baldwin: Carleton's state law claim, which he may pursue in state court, subject of course to any applicable defenses.

April 16, 2020 _____
United States District Judge

11